DARIUS A. MOORE, Respondent, *v.* JAMES M. RYDER, Impleaded, etc., Appellant.

A draft, upon which defendant was an accommodation acceptor, was fraudulently diverted from the purpose for which it was drawn and accepted, and was transferred to plaintiff in payment of debts due from the payee to two firms, in each of which plaintiff was a partner, and of a debt due to plaintiff individually. Plaintiff agreed to pay to his partners in the respective firms their shares in the partnership debts. He did not in fact pay his partners, and it did not appear that he had been called upon so to do. In an action upon the draft, *held*, that plaintiff was not a *bona fide* purchaser for value, and could not maintain his action; that, while his partners could have adopted and enforced the promise for their benefit, until they did so or in some way claimed the benefit of it, the original parties to the promise could rescind or modify it, and the obligation was imperfect; and if they should hereafter adopt the promise defendant could defend against them upon the ground of the fraud.

In any event, plaintiff could only be a *bona fide* holder for value to the extent of the shares of his partners in the debts which he assumed to pay.

The acceptance of a time draft, so fraudulently diverted, in payment of a debt past due, is not such a necessary extension of the time of payment of the debt as to furnish a consideration and make the transferee a holder for value.

(Argued May 5, 1875; decided June term, 1875.)

APPEAL from judgment of the General Term of the Supreme Court in the third judicial department affirming a judgment in favor of plaintiff, entered upon a decision of the court upon trial without a jury.

This action was brought upon a draft drawn by J. W. Lowden, as agent of the Cooper's Falls Iron Company, upon defendant James M. Ryder, and accepted by him for the purpose stated in the opinion of EARL, C., wherein may be found a sufficient statement of the facts.

*D. Magone, Jr.,* for the appellant. Plaintiff was not a *bona fide* holder of the draft, and could not maintain this action. (*Spears* v. *Myers*, 6 Barb., 445; *Wardell* v. *Hoell*, 9 Wend., 170; *Payne* v. *Cutler*, 13 id., 605; *Clark* v. *Ely*, 2 Sandf. Ch., 166; *Woodhull* v. *Holmes*, 10 J. R., 231; *Coddington* v. *Bay*, 20 id., 637; *Golsmid* v. *Lewis Co. Bk.*, 12 Barb., 407; *Huff* v. *Wagner*, 63 id., 215; *Lawrence* v. *Clark*, 36 N. Y., 128; *Mer. Nat. Bk. of Syr.* v. *Comstock*, 55 id., 24.) The fact that plaintiff assumed to pay the firms of which he was a copartner did not make him a *bona fide* holder. (*Huff* v. *Wagner*, 62 Barb., 215; *Stalkers* v. *McDonald*, 6 Hill, 93–96; *Edwards* v. *Jones*, 6 C. & P., 633; *Simpson* v. *Clark*, 2 C., M. & R., 343; *Petty* v. *Hamilton*, 2 Humph. [Tenn.], 102; *Holman* v. *Hobson*, 8 id., 127–129; *Nash* v. *Brown*, 10 Am. ed. Chit. on Bills, note *x*, p. 74; *Wintle* v. *Crowther*, 1 C. & J., 316; 1 Pars. on Bills and Notes, 191; *Beyman* v. *Hess*, 13 J. R., 52.)

*L. W. Russell* for the respondent. Plaintiff was a *bona fide* holder because he had no notice of the diversion, and took it in payment of debts, and extended the time of payment.

(*Coddington* v. *Bay*, 20 J. R., 637; *Root* v. *French*, 13 Wend., 470; *Bk. Salina* v. *Babcock*, 21 id., 500; *Bk. St. Albans* v. *Gilliland*, 23 id., 311; *Stalker* v. *McDonald*, 6 Hill, 93; *Brown* v. *Leavitt*, 31 N. Y., 115; *Boyd* v. *Cummings*, 17 id., 101; *Lawrence* v. *Clark*, 36 id., 128; *Pratt* v. *Coman*, 37 id., 440; *Day* v. *Saunders*, 3 Keyes, 347; *Chrysler* v. *Renois*, 43 N. Y., 209; *Weaver* v. *Barden*, 49 id., 286; *Cary* v. *White*, 52 id., 138; *M. and F. Bk.* v. *Nixon*, 42 id., 438; *Jennison* v. *Stafford*, 1 Cush., 168; *Howell* v. *Jones*, 1 C., M. & R., 97; *Fellows* v. *Prentiss*, 3 Den., 512; *Clothier* v. *Adriance*, 51 N. Y., 322; *Paddon* v. *Taylor*, 44 id., 371; *Park Bk.* v. *Watson*, 42 id., 490; *Burns* v. *Rowland*, 40 Barb., 369.) Plaintiff's agreement to pay one-half of the debts to his partners was for a valuable consideration, and could be enforced by the beneficiaries. (*Lawrence* v. *Fox*, 20 N. Y., 120; *Elwood* v. *Monk*, 5 Wend., 235.) A discharge of part of the obligations made plaintiff a holder for value. (*Bk. Sandusky* v. *Scoville*, 24 Wend., 114; *Scott* v. *Betts*, H. & D. Supp., 363; *Farrington* v. *Frankfort Bk.*, 24 Barb., 554; *N. Y. M. Works* v. *Smith*, 4 Duer, 362; *Gould* v. *Segee*, 5 id., 260; *Lathrop* v. *Morris*, 5 Sandf., 7; *Warren* v. *Winslow*, 1 Sandf. Ch., 430; *Halstead* v. *Schmelzel*, 17 J. R., 80; *Cunningham* v. *Littlefield*, 1 Edw., 104.)

EARL, C.　John W. Landen was agent of the Cooper's Falls Iron Company, and as such agent, on the 1st day of October, 1868, he drew the draft in suit on the defendant Ryder, who accepted the same. The draft was made, accepted and delivered to Landen, mainly for the special purpose of paying certain drafts of the iron company which had been previously accepted by Ryder for its accommodation, and which were then held by the Jefferson County Bank. Landen, however, did not take up the iron company's drafts, but transferred and delivered the draft in suit to the plaintiff, who took the same without any knowledge of the purpose for which it was made and accepted. At the time of the transfer to the plaintiff the iron company was indebted to him and Burnham, under the

firm name of Moore & Burnham, $723.35 ; to plaintiff and Kingsbury, under the firm name of Moore & Kingsbury, $272.53, and to plaintiff individually, $110.56 ; all the debts being past due. The plaintiff received the draft in payment of these debts and assumed to pay to his partners, Burnham and Kingsbury, their respective shares of the debts. Upon these facts the judge at Special Term found, as a conclusion of law, that plaintiff was a *bona fide* holder of the draft for value, and entitled to recover against the acceptor, and an exception to this finding presents the only question for our consideration.

This draft having been fraudulently diverted from the object for which it was made and accepted, can be enforced against the accommodation acceptor only by a *bona fide* holder for value. This has been so thoroughly settled by repeated adjudications in this State, as to need no further discussion. The only difficulty in this and similiar cases, is to determine what is a parting with value within the meaning of the rule. A mere precedent debt does not make a party taking such a draft a holder for value, whether the draft be taken in payment of the debt or as collateral security therefor. (*Coddington* v. *Bay*, 20 J. R., 637; *Wardell* v. *Howell*, 9 Wend., 170; *Payne* v. *Cutler*, 13 id., 605 ; *Stalker* v. *McDonald*, 6 Hill, 93 ; *Farrington* v. *Frankfort Bank*, 24 Barb., 555 ; *Huff* v. *Wagner*, 63 id., 215; *Lawrence* v. *Clark*, 36 N. Y., 128; *Pratt* v. *Coman*, 37 id., 440 ; *Weaver* v. *Barden*, 49 id.; 286.)

The law enables a *bona fide* holder of negotiable paper which has been fraudulently obtained, diverted or used, to recover thereon only to protect him against loss, upon the principle that when one of two innocent parties must suffer by the fraud or wrong of a third person, the one who put it in the power of such third person to commit the fraud or wrong must bear the loss. In case the holder of such paper has not parted with any value or incurred any binding obligation, or changed his position to his detriment on the faith thereof, he cannot recover thereon against the party defrauded or wronged.

In this case, plaintiff gave up no security and parted with no value when he received the draft. But it is claimed that he extended the time of payment upon the debt until the maturity of the draft, and that this extension makes him a holder for value. I cannot assent to this. There was no. agreement to extend the time of payment and the receipt by plaintiff of this paper fraudulently diverted, would furnish no consideration for such an agreement. If the rule were otherwise, then in all cases where negotiable paper fraudulently diverted is received in payment of a precedent debt past due, there would be such an extension of time as would make the taker a holder for value. The paper taken must have some time to run or the taker cannot be a *bona fide* holder, and the claim is, that when such paper is taken in payment of a precedent debt past due, there is such a necessary extension of the time of payment of the debt, as to make the taker a holder for value. If this claim be well founded, the rule that one who takes negotiable paper which has been fraudulently diverted in payment of a precedent debt cannot enforce the same against the party wronged by the fraud, is of no practical value; and yet the rule has been enforced in many cases. (*Rosa* v. *Brotherson*, 10 Wend., 86 ; *Payne* v. *Cutler ; Lawrence* v. *Clark*, and other cases above cited.)

It is further claimed that the assumption by plaintiff to pay his partners, Burnham and Kingsbury, their shares of the demands against the iron company which were paid by the draft transferred to him, makes him a holder within the rule. He did not in fact pay his partners, and so far as the case shows, they did not call upon him for payment. While they could adopt and enforce such a promise made upon a valuable consideration for their benefit, within the rule laid down in the case of *Lawrence* v. *Fox* (20 N. Y., 268), they did not do it, and until they did adopt it, or in some way claim the benefit of it and accept the new debtor in place of the old one as their principal debtor, the original parties to the promise could rescind or modify it ; and the obligation of the promissor to the party for whom the promise was made remained imperfect.

If they should adopt the promise, they would have to adopt the instrumentalities by which it was obtained; and the plaintiff could defend against them upon the ground that he was induced to make the promise by fraud.

I am also of the opinion that the mere promise of the transferee of such paper does not make him a holder for value, for the reason that the promise is not binding, and cannot, therefore, in a legal sense, subject him to loss. (*Weaver* v. *Barden*, 49 N. Y., 286, 291, and cases cited.) The promise is no more binding than it would have been if it had been made to pay a certain sum of money at some future time to the fraudulent negotiator of the paper. That such a promise made the transferee a holder for value within the meaning of the rule no one would claim.

In any event plaintiff could only be a *bona fide* holder for value to the extent of the shares of his partners in the debts which he had assumed to pay. (*Stalker* v. *McDonald*, 6 Hill, 93; *Huff* v. *Wagner*, 63 Barb., 215.)

The judgment should therefore be reversed and new trial granted, costs to abide event.

Gray, C. The defendant Ryder was an accommodation acceptor of the draft in question, which was by Landen diverted from the purposes for which it was made and accepted; and although the plaintiff received it in ignorance of that fact and before its maturity, the equities of Ryder as against him are the same as if he had received it with notice of all the facts in relation to the object for which it was made and accepted, unless he paid for it a valuable consideration, consisting of something other than an antecedent indebtedness of the iron company to the plaintiff, or the firms of which he was a member and for which a note or other security had never been given. See *Weaver* v. *Barden* (49 N. Y., 286, 291 to 295), where the authorities on this subject are cited and considered. Assuming, therefore (without deciding), that the plaintiff, as a part of the consideration to be paid by him for the draft, agreed unconditionally to pay to Burnham,

his share of the demand due him and the plaintiff, and to Kingsbury his share of the demand due to him and the plaintiff from the iron company, whatever those shares should be ascertained to be, and that he thereby became immediately upon demand and refusal to pay, liable to an action in favor of each of them for his share of the demand, and that he was to the extent of his liability thus incurred a purchaser for value, yet, as he neither gave nor surrendered a note or security of any description for the demand due him individually, he did not, within the rule stated, acquire (at least to the extent of that demand) any equity in the draft superior to that of Ryder, and to that extent the action was defended upon the principle that he is only to be considered a *bona fide* purchaser to the extent to which he has paid value. (*Edwards* v. *Jones*, 7 Carr and Payne, 633; *Williams* v. *Smith*, 2 Hill, 301, 302; *Stalker* v. *McDonald*, 6 id., 93, 96; *Huff* v. *Wagner*, 63 Barb., 215, 229 to 236; *Weaver* v. *Barden*, *supra*, 295.)

The judgment rendered at Circuit and the judgment appealed from should be reversed and a new trial ordered.

All concur with EARL, C., GRAY, C., expressing no opinion upon the first point discussed by EARL, C.

Judgment reversed.