OPINION OF THE COURT
Michael L. McCarthy, J.
This is a decision on the plaintiff’s motion for summary judgment.
The plaintiff, Maxine R. Weissman, is employed by the Buffalo Board of Education which contracted with Blue Cross and Blue Shield of Western New York to provide health insurance coverage for its employees.
As of October 1, 1976, the plaintiff was covered under both the basic coverage and the major medical expense rider provided by Blue Cross and Blue Shield. The plaintiff received a copy of the basic policy and the major medical *1064 expense rider at the time her coverage commenced. Included in the rider was a provision, article VI(l)(a), which provided coverage for: “Services of a private duty registered professional nurse or private duty licensed practical nurse while confined as a registered bed patient in a hospital or following discharge from a hospital as registered bed patient, when skilled nursing care on a continuing basis is required and a doctor has certified such requirement has been met” (emphasis added).
On July 1, 1980, Blue Cross and Blue Shield amended article VI(l)(a) of the major medical expense rider by an indorsement to provide coverage for: “Services of a private duty registered professional nurse or private duty licensed practical nurse while confined as a registered bed patient in a participating or non-participating hospital or following discharge from a participating or non-participating hospital as a registered bed patient, but only if Blue Cross and Blue Shield, in their sole judgment, determine that the medical condition of the member requires private duty nursing care” (emphasis added).
While the health insurance contract was in effect in June, 1981, the plaintiff underwent surgery to repair a decompression of the lumbar bodies and received services of a private-duty registered professional nurse at the direction of her own physician. The plaintiff incurred expenses totaling $1,655.58.
Based upon the health insurance coverage, the plaintiff sought reimbursement of these costs. The defendants denied the plaintiff’s claim on the basis of a review of her case by their own physician who concluded private-duty nursing care services were not required.
The plaintiff submitted a letter from her own doctor, dated April 19, 1982, which stated the plaintiff did in fact require skilled nursing care on a continuous basis following her surgery in June, 1981.
The plaintiff relies on article VI(l)(a) of the original major medical expense rider which would cover the cost of private-duty nursing care when such care “is required and a doctor has certified such requirement has been met”. However, the defendants have denied coverage on the basis *1065 of the indorsement to article VI(l)(a) which states that the rider would continue to cover the cost of private-duty nursing care “but only if Blue Cross and Blue Shield, in their sole judgment, determine that the medical condition of the member requires private duty nursing care”.
While the indorsement to the rider took effect on July 1, 1980, the plaintiff has denied any knowledge of the indorsement and contends that she never received the indorsement.
Thus, the question involved is whether the indorsement is an effective amendment to the major medical expense rider. This is a question of law, not of fact and can therefore be the subject of a motion for summary judgment.
It is the opinion of this court that in order for the indorsement to be an effective part of the insurance contract, the statutory requirements of section 162 of the New York State Insurance Law must be met. According to section 162 (subd 1, par [a]) of the Insurance Law, group accident or health insurance policies must include a clause to the effect: “that no agent has authority to change the policy or to waive any of its provisions; and that no change in the policy shall be valid unless approved by an officer of the insurer and evidenced by endorsement on the policy or by amendment to the policy signed by the policyholder and the insurer” (emphasis added).
The regulations involving the policy and certificate provisions further expand the rules regarding insurance policy rider (11 NYCRR 52.18 [g] [2]): “[ejxcept for riders by which the insurer effectuates a request made in writing by the policyholder or exercises a specifically reserved right under the policy, all riders added to a policy after date of issue which reduce or eliminate coverage in the policy shall provide for signed acceptance by the policyholder” (emphasis added).
The purpose of the statute and regulation is to insure that the parties intended to change their original contract to the extent specified in the rider. (Metzger v Aetna Ins. Co., 229 App Div 26; 29 NY Jur, Insurance, § 633.)
The plaintiff claims that no consent was given by her to effect any change in her original insurance coverage. The *1066 defendants claim there has been no reduction in the insured’s benefits; that in effect the indorsement provides a quid pro quo with the original benefits. However, there has been a change in the original coverage of the major medical expense rider which is more restrictive on the insured because the insured must now seek prior approval for private-duty nursing care services based on the insurer’s exclusive judgment. Because this was a limitation on the benefits, it would have been necessary for the insured to have consented to the indorsement in writing prior to its taking effect. There is no evidence that the plaintiff did in fact consent nor does the defendant claim that the plaintiff consented.
It has been established that as a matter of law an insurer may not take away or restrict coverage from its insured who is a third-party beneficiary absent the insured’s consent. (Danzig v Dikman, 78 AD2d 303; Bellmon v Blue Cross & Blue Shield of Greater N. Y., 98 Misc 2d 445.)
Nor is it sufficient that the department of personnel or chief administrator for the Buffalo Board of Education may have authorized a reduction in coverage for their employees as third-party beneficiaries. (Bellmon v Blue Cross & Blue Shield of Greater N. Y., supra, at p 447.) As stated in Dyer v Great Eastern Ins. Co. (71 Misc 2d 89, 93): “parties to a contract entered into for the benefit of a third person may cancel or rescind the policy of insurance, the contract, ‘as they see fit, without the assent of the third person at any time before the contract is accepted, adopted or acted upon by him and such rescission deprives the third person of any rights under or because of such contract (Moore v. Ryder, 65 N. Y. 438).’”
However, after the third person accepts, adopts or acts upon the contract entered into for his benefit, the parties thereto cannot rescind the same without his consent, so as to deprive him of its benefits. (Comley v Dazian, 114 NY 161.) There is no evidence or claim by the defendants that the board of education consented to the rider.
It should be noted that the plaintiff contends she never received a copy of the indorsement and was not aware of its existence until after her claim was rejected by Blue Cross *1067 and Blue Shield. The plaintiff complied with the terms of the original major medical expense rider in obtaining a doctor’s certification with respect to her need for private-duty nursing care while in the hospital. It would be impossible under such circumstances to imply any consent to the indorsement by the plaintiff.
In addition to lack of consent to the indorsement, there is also the issue as to whether the indorsement itself is unconscionable and against public policy. Related to this is the unequal bargaining positions of the insurer and insured with respect to standard form contracts. In the case at hand, the plaintiff was presented with a standard form contract where the terms were drafted solely by the defendants. When such situation occurs, the insured may either accept the terms as drafted or reject them. (Keeton, Insurance Law Rights at Variance with Policy Provisions, 83 Harv L Rev 961, 963.) When such an unequal bargaining situation develops between the parties, the courts will more carefully scrutinize such agreements for the purpose of avoiding unconscionable clauses. (6A Corbin, Contracts, § 1376.) Unconscionability has been defined as contractual overreaching, imposition, oppressiveness or patent unfairness. (Hume v United States, 132 US 406.)
Initially under the Blue Cross and Blue Shield major medical expense rider, article VI(l)(a), an insured could obtain the certification of his own doctor to determine whether private-duty nursing care was required. This procedure seemed practical since the doctor who would make such determination is the same doctor who has firsthand knowledge of the patient’s case.
But the indorsement to the major medical expense rider provides that Blue Cross and Blue Shield in their sole judgment will determine if such private-duty nursing care is necessary. There is no provision for consultation with the insured’s own physician who is treating the insured. No longer can an insured rely on the judgment of his own physician. Instead, the entire decision will be based on the review by the party who may be paying for the services. This type of provision is patently unfair to the insured because no reasonable person would accept these terms unless they had to accept the coverage due to necessity. It *1068 should be noted that the rider does not provide who at Blue Cross and Blue Shield shall make the judgment in regard to coverage based on the medical condition of the insured. Theoretically, it could be the corporation’s comptroller or the head of claims. Therefore, as it is written and applied, the indorsement to article VI(l)(a) of the major medical expense rider is unconscionable and should not be enforced. Also, the fact that Blue Cross and Blue Shield would attempt to effect such modification without the knowledge and consent of the insured only compounds the unfairness of this situation.
Based upon the defendants’ failure to comply with the statutory requirements of notice with respect to riders on insurance policies and the unconscionable .nature of the indorsement, the indorsement is not an effective amendment to article VI(l)(a) of the major medical expense rider. When an amendment to an insurance contract is deemed ineffective, the courts will look to the terms in the original to interpret the policy with respect to the insured’s reasonable expectations of coverage. (Lipton v Liberty Mut. Ins. Co., 34 NY2d 356.)
In the present case, the plaintiff relied on the terms of the major medical expense rider and her doctor’s advice in obtaining private-duty nursing care. Under these circumstances, the plaintiff expected that her medical insurance policy would cover such treatment. Therefore, the policy shall be interpreted in terms of the original major medical expense rider article VI(l)(a) so that certification by the plaintiff’s physician of her need for private-duty nursing care is sufficient proof of her claim for insurance coverage.
It is therefore ordered that summary judgment be entered for the plaintiff and against the defendants in the amount of $1,655.58 together with the costs and disbursements of this action.